No. 49,411

STATE OF KANSAS, *Appellee,* v. RAYMOND EDWARD MCGEE, *Appellant.*

(578 P.2d 269)

Opinion filed May 6, 1978.

*Robert V. Wells,* of Kansas City, argued the cause and was on the brief for the appellant.

*Anita L. Mortimer,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Raymond Edward McGee brings this direct appeal from the district court of Wyandotte County, following his conviction of aggravated kidnapping, K.S.A. 21-3421, and attempted kidnapping, K.S.A. 21-3301 and 21-3420. McGee was sentenced to life imprisonment for the aggravated kidnapping, and to a concurrent term of not less than one nor more than five years for the attempted kidnapping.

Defendant claims that the trial court erred in denying his motion to sever, in admitting other ·crimes or civil wrongs evidence under K.S.A. 60-455, in admitting into evidence testimony of a statement volunteered by the defendant while in custody, which statement had not been disclosed to defense counsel during discovery, in refusing to declare a mistrial because of the alleged misconduct of a juror, and in denying his motion for a new trial, based upon his claim that the verdict was not supported by the evidence.

Janet, a tiny girl in her early twenties, testified that on Saturday, September 4, 1976, late at night, she was walking near the Kansas Avenue bridge in Kansas City, Kansas. The defendant stopped his car and asked Janet if she wanted a ride; she declined. The defendant then got out of his car, ran after Janet, caught her, threatened her life if she screamed, pulled her into the car, and

drove to the Santa Fe railroad yards, where he parked the car and held Janet captive in the car for about one and one-half hours. She testified that the defendant raped her three times and committed oral sodomy upon her once. Railroad detectives approached the car, questioned Janet and the defendant, and told them to leave the Santa Fe property. Janet explained that she did not sound an alarm in the presence of the officers because of threats by the defendant, and her fear of him. The defendant then drove to 42nd and Metropolitan, where he pushed Janet from the car. She ran to a nearby 7-Eleven store, called the police, and reported the rape. Janet gave a description of the car, a gold car with a black hardtop, together with the license number, and she identified the defendant positively. He was also identified by the Santa Fe officers.

The charge of attempted kidnapping arose out of an incident that occurred in the Indian Springs shopping center in Kansas City, Kansas. Brenda and a co-worker, Jane, were on their way to work at Macy's, about 8:30 o'clock on the morning of September 15, 1976. As they walked across the parking lot, a car pulled up close beside Brenda. It came so close that it brushed her dress. Thinking it was someone she knew, she bent down to say, "Hi." Brenda did not recognize the man in the car. Suddenly, he grabbed her by the arm and pulled her into the car window. As he was attempting to pull her into the car, Jane took Brenda's other arm and tried to pull her out of the car. The man grabbed Brenda's dress and pulled it over her head; she was half in, half out of the car. Both girls screamed. Finally, Jane was successful in pulling Brenda out; both girls fell to the ground, and the car sped away. Both women gave accurate descriptions of the defendant and the car he was driving, a gold car with black top. A few days later, Jane spotted the car in the parking lot at the shopping center. She recognized defendant as the driver. She reported this immediately to the security office, and the defendant was apprehended. Both women positively identified the defendant.

McGee testified in his own defense. He admitted that he picked Janet up on the night of September 4, but he denied using any force and said she voluntarily entered his car. He denied that he had sexual relations of any sort with Janet. As to the charge that he attempted to kidnap Brenda, he denied being present and offered alibi evidence.

McGee was charged with four separate offenses. He was found guilty of the charge contained in count one, the aggravated kidnapping of Janet, and he was found guilty of the charge contained in count four, the attempted kidnapping of Brenda. He was found not guilty of the aggravated sodomy of Janet, charged in count two, and the jury was unable to reach a verdict on the charge that he raped Janet, contained in count three. A mistrial was declared as to count three.

The defendant first contends that the trial court erred when it denied his motion to sever count four from counts one, two, and three for the purpose of trial. Defendant contends that the joinder of count four with the other three counts for trial prejudiced him and denied him his right to a fair and impartial trial.

We discussed the statute governing joinder, K.S.A. 22-3202(1), and the test to determine proper joinder, together with the various applicable rules, in the recent case of *State v. Howell,* 223 Kan. 282, 284-286, 573 P.2d 1003 (1977). We need not repeat what we so recently said. However, we have carefully examined the record in this case, and tested it by the rules and principles enunciated in *Howell.* The facts surrounding the abduction of Janet, and the facts surrounding the attempted abduction of Brenda, are strikingly similar. Even if separate trials had been granted, it is probable that evidence of one could have been introduced in the trial of the other, pursuant to K.S.A. 60-455. In such case, nothing would be gained by separate trials. The offenses were handled separately and distinctly by counsel in their argument, by the court in its instructions, and in the presentation of evidence. We conclude that the charges were properly joined, and we find no abuse of discretion in not severing count four.

For his second claim of error, the defendant contends that the trial court erred in permitting the state to present to the jury the testimony of Susan. The court first heard her testimony *in camera,* overruled defense objections, and then permitted her to testify in open court. Susan testified that on August 30, 1976, she drove to the Indian Springs shopping center, and as she was parking her car she noticed another car driving back and forth. She got out of her car, put her baby in a stroller, and started down the aisle between the cars. The car she had previously noticed pulled along side of her and as she turned around to see who it was, the

driver reached out and grabbed her by the waistband of her jeans and pulled and jerked her toward his car. He pulled so hard that her pants came undone and unzipped. She lost her grip on the stroller, screamed, turned, and struck the man as hard as she could. He let loose and she fell to the ground. As she fell, the car sped away. Susan immediately reported the incident, and she described the car as a gold Cutlass with black top and black interior. She positively identified the defendant as her assailant.

The trial court admitted the testimony of Susan to show identity, intent, and motive. The defendant does not challenge the sufficiency of the court's cautionary instructions. He contends that identity, intent, and motive were not in issue, and therefore the evidence was inadmissible. Further, he contends that such evidence must be admissible as to *all* offenses for which a defendant is standing trial. We disagree.

Identity was an issue insofar as count four was concerned. Brenda and her co-worker, Jane, both positively identified McGee. He denied that he was present in the shopping center area at the time the offense was committed, and presented alibi evidence. The facts of the occurrences involving Brenda and Susan were similar; both occurred at the Indian Springs shopping center within a short time span; the same car was involved; and defendant was positively identified by three witnesses. We hold that the testimony was relevant to prove a fact in issue, identity. *State v. Bly,* 215 Kan. 168, 177, 523 P.2d 397 (1974); *State v. Henson,* 221 Kan. 635, 644, 562 P.2d 51 (1977); *State v. Gourley,* 224 Kan. 167, 578 P.2d 713 (1978).

Were *intent* and *motive* in issue as to the charge of aggravated kidnapping? We hold that they were. Though defendant admitted that Janet rode in his car on the night of September 4, he denied the use of force and testified that she voluntarily entered and remained in the car. Also, he denied that any sexual activity, forced or otherwise, occurred. His intent and motive were squarely in issue.

"Where an act in itself may be susceptible to two interpretations, one innocent and the other criminal, then the specific intent with which the act is done becomes the critical element in determining its character." *State v. Faulkner,* 220 Kan. 153, Syl. 5, 551 P.2d 1247 (1976); and see *State v. Brooks,* 222 Kan. 432, 434, 565 P.2d 241 (1977).

An element of aggravated kidnapping is the specific intent with which the taking or confinement of the victim is done. K.S.A. 21-3420.

There is no requirement that evidence of other offenses or civil wrongs be admissible as to every offense for which a defendant is being tried. We conclude that the trial court did not err in admitting Susan's testimony.

For his third point, McGee contends that the trial court erred in allowing into evidence, over objection, a purported statement made by the defendant while in custody, for the reason that the prosecution previously advised the defense that it had no statement of the defendant, and the statement was a surprise, and was not disclosed in conformity with the court's discovery order.

It developed during argument on defendant's motion to exclude the evidence that the prosecution's entire file had been turned over to defense counsel, and he had been given full opportunity to examine it. A report of the statement was included therein. Both defense counsel and the prosecutor failed to observe the statement, which was included in the report of Detective Maskill. Defense counsel conceded that the entire prosecution file had been open to him, and that he had in fact seen Maskill's report. The statement was a short, two-sentence volunteered expression by the defendant. It was not discovered by counsel until Detective Maskill pointed it out to the prosecutor, on the day he was to testify.

K.S.A. 22-3212(7), providing discovery in criminal cases, also grants discretion to the trial courts. The statute reads in part as follows:

". . . If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

In this case the statement was unknown to the prosecutor, and the failure to disclose it prior to trial was inadvertent. The report, containing the statement, was made available to defense counsel, who overlooked it when he examined the file. Both counsel had access to the information and overlooked it. Under the circumstances we cannot say that the trial court abused its discretion in permitting the statement to be introduced in evidence. See *State v. Morin,* 217 Kan. 646, 651-652, 538 P.2d 684 (1975).

Defendant next contends that the trial court erred in refusing to declare a mistrial after it was brought to the court's attention that one of the jurors had consumed alcoholic beverages during the course of the trial. This matter was brought to the court's attention shortly after the jury returned its verdict. The court then questioned the juror, who stated that he had had one highball before he came to trial that morning, and that he had consumed two beers the evening before. The trial judge stated that he himself did not notice any indication whatsoever of intoxication, and that he did not find any misconduct on the part of juror Black. The court concluded by saying, "I observed the jurors throughout this trial and throughout the day and I felt at no time that any of the jurors had misconducted themselves in any way."

The granting of a mistrial for juror misconduct is a matter of discretion for the trial court. It is not a basis for a new trial, "unless it is shown to have substantially prejudiced the rights of the defendant." *State v. Arney,* 218 Kan. 369, 371-372, 544 P.2d 334 (1975). In the case at hand, the trial court acted promptly, examined the juror, and determined the issue. We cannot see that the defendant was prejudiced, or that the trial court abused its discretion.

Finally, the defendant contends that there was insufficient evidence to support the verdict. On appellate review, the question is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence was sufficient to form the basis for a reasonable inference of guilt. *State v. Ames,* 222 Kan. 88, 95, 563 P.2d 1034 (1977).

Viewing the evidence in the light most favorable to the prevailing party, as we must on appeal, we conclude that the evidence was sufficient.

The judgment is affirmed.