No. 70,178

STATE OF KANSAS, *Appellee*, v. JOSEPH B. VANDIVER, *Appellant*.
(891 P.2d 350)

Opinion filed March 10, 1995.

*Daniel S. Garrity*, of Garrity, Kuckelman & Kurth, of Atchison, argued the cause and was on the brief for appellant.

*Martin Asher*, county attorney, argued the cause, and *Patrick E. Henderson* and *Linda S. Mock*, assistant county attorneys, and *Robert T. Stephan*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: We granted the State's petition for review of the Court of Appeals' reversal of the defendant's conviction for possession of marijuana, a class A misdemeanor contrary to K.S.A. 65-4127b(a)(3) and K.S.A. 65-4105(d)(16). See *State v. Vandiver*, 19 Kan. App. 2d 786, 876 P.2d 205 (1994). The State asserts that the Court of Appeals erred in (1) employing a de novo review of the evidence in determining whether the search was constitutionally permissible and (2) its determination that K.S.A. 22-2509 did not justify the warrantless search of the defendant. This court has jurisdiction pursuant to K.S.A. 20-3018(b) and K.S.A. 60-2101(b).

On May 3, 1993, Mike Wilson, a police detective, obtained a search warrant for David Moneymaker's residence in Atchison, Kansas. The affidavit for the search warrant stated: (1) that Moneymaker lived at the residence; (2) that Moneymaker was a convicted drug offender; (3) that Moneymaker had been alleged to be a source for marijuana; (4) that Moneymaker previously had been seen weighing marijuana at the residence; and (5) that two marijuana purchases had occurred at the residence within the pre-

vious four days. The search warrant authorized the police to search Moneymaker's apartment for marijuana and other controlled substances; drug paraphernalia; firearms, money, and documentary evidence associated with drug trafficking; and electronic equipment commonly traded for controlled substances.

Within an hour after obtaining the search warrant and without requesting other officers to assist him, Wilson knocked on Moneymaker's apartment door. When Moneymaker opened the door, Wilson entered the kitchen of the apartment and arrested Moneymaker. Wilson then scanned the living room of the apartment and observed six persons in the living room playing a Nintendo-type game. The apartment reeked of burnt marijuana, and a baggy containing green vegetation was on the living room floor in the midst of the individuals gathered around the game. Wilson believed the baggy contained marijuana.

Wilson announced to the individuals that he had a search warrant for the apartment. Wilson immediately arrested an individual he recognized as being involved in a drug buy several days earlier. Wilson then conducted a pat-down search of Vandiver. Wilson removed a 35-millimeter film canister from Vandiver's front pants pocket. At trial, Wilson stated that he removed the canister from Vandiver's pocket "to inspect it, not knowing what it was," and because he was suspicious it was either a weapon or contraband. Vandiver was arrested for possession of marijuana. Wilson then conducted a pat-down search of Orrel Berry. Wilson found Berry had drug paraphernalia on his person. Berry was arrested. Wilson then searched and released each of the remaining individuals after determining they did not possess any contraband.

Prior to trial, Vandiver moved to suppress the film canister containing marijuana as the product of an unlawful search. After hearing the evidence, the district judge found that Wilson did not believe he was in immediate danger or about to be attacked. The judge found that the persons in the apartment had offered no resistance and rejected the State's argument that the warrantless search was justified under K.S.A. 22-2509(a) to protect the officer from attack. The judge found that exigent circumstances to prevent the disposal or concealment of an item described in the war-

rant existed, upheld the search under K.S.A. 22-2509(b), and denied Vandiver's motion to suppress.

At trial, the film canister containing marijuana was introduced into evidence over defendant's objections. Vandiver was convicted of possession of marijuana. Vandiver appealed. The Court of Appeals held that Wilson had neither probable cause nor exigent circumstances to justify the search of Vandiver under K.S.A. 22-2509(b), reversed Vandiver's conviction, and remanded the case for a new trial. This court granted the State's petition for review.

## Standard of Review

The Court of Appeals acknowledged that the State and Vandiver agreed on the facts. Citing *State v. Young*, 228 Kan. 355, 356, 614 P.2d 441 (1980), the Court of Appeals stated that when the facts material to a motion to suppress evidence are not in dispute, an appellate court's standard of review is unlimited and the question of whether to suppress evidence becomes a question of law. It concluded that when determining questions of law, an appellate court's review is de novo. 19 Kan. App. 2d at 788. Citing *State v. McKeown*, 249 Kan. 506, 514, 819 P.2d 644 (1991), the State argues that it is the trial court that determines the propriety of the search based upon the facts unique to the case. It asserts that the Court of Appeals' review of the trial court's admission of the evidence seized was limited to determining whether the findings of the trial court were based upon substantial evidence. The State asserts that the Court of Appeals misread *Young*, erroneously applied a de novo standard of review, and improperly reweighed the evidence in finding that exigent circumstances did not exist to justify the warrantless search of Vandiver.

*Young* was an interlocutory appeal by the State from an order suppressing the result of a breath alcohol test. Prior to discussing the primary issue, the *Young* court noted that the parties had stipulated that the test result should be suppressed if no substantial expenditure of time or money would be required of the State in furnishing extra breath samples to the defendant. The *Young* court rejected the notion that the parties could enter into a stipulation that would bind the court. 228 Kan. at 356-57. The

*Young* court then noted that because the facts material to the motion to suppress were not in dispute, the question of whether to suppress was a question of law. 228 Kan. at 356.

In *State v. McKeown,* 249 Kan. 506, the State appealed from the district court's finding that the officer did not have reasonable and articulable suspicion to justify the stopping of defendant's vehicle and its order suppressing evidence seized after the stop. The *McKeown* court, quoting *Lansing-Delaware Water District v. Oak Lane Park, Inc.,* 248 Kan. 563, 572-73, 808 P.2d 1369 (1991), noted that an appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court and must disregard any conflicting evidence or other inferences that might be drawn therefrom. It concluded that there was substantial evidence to support the district court's suppression of the evidence seized as a result of the stop and affirmed the judgment of the district court. 249 Kan. at 514-15.

In determining the proper standard for appellate review, we find the case of *Arizona v. Fulminante,* 499 U.S. 279, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991), to be instructive. In that case, the United States Supreme Court discussed the totality of the circumstances standard of review applicable to a state court's determination of whether an accused's confession was voluntary. It noted that when reviewing a state court's decision as to the voluntariness of a criminal defendant's confession, it normally gives great deference to the factual findings of the state court. It stated that the ultimate issue of voluntariness, however, is a legal question requiring independent federal appellate determination. 499 U.S. at 285-87. *Fulminante* states our standard of appellate review when reviewing a judge's determination of whether a criminal defendant's confession was voluntary or whether evidence seized in a search should be suppressed.

Upon the hearing of a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *Mincey v. Arizona,* 437 U.S. 385, 390-91, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978); *State v. Schur,* 217 Kan. 741, 743, 538 P.2d 689 (1975). An appellate court will uphold a

trial court's suppression of evidence if that ruling is supported by substantial competent evidence. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979). When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination.

Because the facts were not in dispute, the Court of Appeals correctly concluded that all that remained was a question of law and therefore its review was de novo.

### Search of Persons

. K.S.A. 22-2509 provides:

"In the execution of a search warrant the person executing the same may reasonably detain and search any person in the place at the time:

(a) To protect himself from attack, or

(b) To prevent the disposal or concealment of any things particularly described in the warrant."

The district court found that the pat-down search of Vandiver during the execution of a search of the premises was authorized pursuant to K.S.A. 22-2509(b). In the Court of Appeals, Vandiver argued that the trial court erred in finding that exigent circumstances justified the warrantless search. 19 Kan. App. 2d at 788. In its brief the State asserted that the warrantless search of Vandiver could be validated under K.S.A. 22-2509(a) or (b); therefore, the judgment of the trial court should be upheld if correct for either reason.

The Court of Appeals declined to address whether the search was justified under K.S.A. 22-2509(a) because the State had not appealed the district judge's finding that there was no evidence that Wilson believed he was in immediate danger of attack or that the persons in the residence would resist an arrest. 19 Kan. App. 2d at 789.

The Court of Appeals noted that the trial court had upheld the warrantless search of Vandiver, pursuant to K.S.A. 22-2509(b), to prevent disposal or concealment of things described in the search warrant based on: (1) the number of individuals in the residence;

(2) the smell of burnt marijuana; (3) the previous police surveillance of the apartment; and (4) the speed and ease in which drugs could be concealed or destroyed. 19 Kan. App. 2d at 789. It observed that, in reaching his decision, the district judge erroneously applied *State v. Horn*, 15 Kan. App. 2d 365, 808 P.2d 438, *rev. denied* 248 Kan. 998 (1991).

In *Horn*, the police, in executing a search warrant authorizing the search of a specific residence and "the person of all persons on said premises," searched the defendant and found cocaine and a large amount of cash in his jacket pocket. 15 Kan. App. 2d at 365, 366. The *Horn* court noted that general search warrants are constitutionally prohibited. In rejecting the State's argument that the search warrant authorized a search of all persons present in the house, the *Horn* court found the facts in the affidavit insufficient to infer that the sole or primary activity at the residence was the sale of drugs and that everyone present would be involved in that illegal activity. It concluded that the search warrant was invalid as to its authorization to search all persons on the premises. 15 Kan. App. 2d at 366-67. It then noted that the police had a valid warrant to search the premises for drugs and drug paraphernalia. When the officers entered the residence, the occupants, which included Horn, fled toward the back of the house. Money and drug paraphernalia were in plain view, indicating to the officers executing the warrant that drugs were being sold. Given that drugs are easily concealed and easily disposed of, the police had probable cause after entering the residence to search everyone running toward the back of the house. The *Horn* court concluded that exigent circumstances existed to justify the search under K.S.A. 22-2509 and upheld the search of the individuals on the premises. 15 Kan. App. 2d at 367-68.

In deciding this case, the Court of Appeals found that the facts in *Horn* were distinguishable. The Court of Appeals concluded Wilson lacked probable cause to search Vandiver because there was no evidence that Wilson believed Vandiver and the four other individuals, excluding the one individual he arrested immediately upon entering the living room, were more than social guests of Moneymaker. It noted there was no evidence to link Vandiver to

the odor of burnt marijuana or to the marijuana on the living room floor. The Court of Appeals pointed out that the officer failed to state in the affidavit for the search warrant that the apartment was used exclusively for the purchase or sale of marijuana. It concluded that aside from Vandiver's presence in the house, Wilson had no reason to believe Vandiver possessed drugs. 19 Kan. App. 2d at 793.

After determining there was not probable cause, the Court of Appeals reviewed the evidence to determine if exigent circumstances existed to justify the search of Vandiver. It acknowledged the State's argument that the number of individuals at the apartment and the likelihood that drugs might be concealed or destroyed could, under proper circumstances, show exigent circumstances. It then noted that Vandiver and the other individuals had cooperated with the officer. It observed that none of the individuals in the living room attempted to flee or tried to conceal or destroy evidence. 19 Kan. App. 2d at 793. Based on these facts, it concluded that there were no exigent circumstances required by K.S.A. 22-2509(b) to justify the officer's search of Vandiver.

As authority for its conclusion, the Court of Appeals noted that the United States Supreme Court reached a similar conclusion in *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979). In that case, an Illinois state court issued a warrant authorizing the search of a tavern and the bartender for evidence of the offense of possession of a controlled substance. Upon entering the tavern to execute the warrant, police officers announced their purpose and advised the patrons of the tavern that they were going to conduct a cursory search of each patron for weapons. The officer who performed a pat-down of Ybarra, one of the customers, felt what he described as a cigarette pack with objects in it. The officer did not remove the object from Ybarra's pocket. After patting down other customers, the officer again frisked Ybarra, retrieved the cigarette pack from his pants pocket, and discovered six tinfoil packets of heroin. Ybarra was indicted for unlawful possession of a controlled substance. He filed a pretrial motion to suppress the contraband seized from his person during the execution of the search of the tavern. The trial court

denied the motion, finding that the search had been conducted under the authority of an Illinois statute practically identical to K.S.A. 22-2509. Ybarra was convicted, and the Illinois appellate court affirmed. 444 U.S. at 87-90.

The United States Supreme Court granted *certiorari.* It noted that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. It stated that a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. It concluded that this requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the legitimate expectations of privacy of persons, not places. 444 U.S. at 91. The Court ruled that "[t]he 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." 444 U.S. at 94. It concluded that under the doctrine of *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), the initial frisk of Ybarra was not supported by a reasonable belief that Ybarra was armed and presently dangerous, which is required to form the predicate to a pat-down of a person for weapons. 444 U.S. at 92-93.

In *State v. Lambert,* 238 Kan. 444, 710 P.2d 693 (1985), this court was required to determine if *Ybarra* applied to searches of private property. In *Lambert,* police officers, armed with a search warrant authorizing the search of an apartment and its male occupant for cocaine, entered the apartment, where they discovered three women. One of the women was sick in bed, and the other two were seated at a table in the kitchen. On the table between the two women was a serving tray containing marijuana and a partially burned, hand-rolled marijuana cigarette. The officer ob-

served the contraband and placed all three women under arrest for possession of marijuana. The officer moved the women into the living room. He then returned to the kitchen and searched a purse that was on the kitchen table. Marijuana and amphetamine were found in the purse. When the defendant acknowledged ownership of the purse, she was arrested for possession of methamphetamine. The defendant's motion to suppress the evidence obtained from her purse was denied by the trial judge. At the hearing on defendant's motion for a new trial, the trial judge concluded that, based on *Ybarra* and *Terry*, he had erred by failing to suppress the evidence. The State appealed, claiming that *Ybarra* only applied to searches of property open to the public and not to searches of private property.

The *Lambert* court held that "the principles stated in *Terry* and *Ybarra* apply equally to searches conducted on private property or on property open to the public" and refused to overrule the trial court's suppression of the evidence. 238 Kan. at 448, 450. The court pointed out that under proper circumstances, the police may search a nonresident visitor or the visitor's belongings in the course of executing a warrant for a premises search. Such circumstances include where the individual consents to being searched, where the item is in plain view on the person or in the person's possession, where there has been a valid arrest, and where there is probable cause to search plus exigent circumstances. It noted that a search may also be conducted under the *Terry* exception, which allows a stop and frisk if there is a reasonable belief that the person is armed and dangerous. 238 Kan. at 450.

Significantly, the *Lambert* court noted that it had previously considered whether K.S.A. 22-2509 sanctions the search of a nonresident or his or her belongings on the premises during the execution of a search warrant in *State v. Loudermilk*, 208 Kan. 893, 494 P.2d 1174 (1972).

In *Loudermilk*, the police had obtained a warrant to search a Wichita residence for opium. The affidavit for the search warrant stated that the persons on the premises were conducting illegal drug sales. The warrant authorized the search of the person,

place, or things which contained opium. 208 Kan. at 894. In executing the warrant, defendant was searched and a packet of heroin was found in his billfold. In upholding the search, the court stated:

"The application and attached affidavit fully established probable cause to believe that opium was concealed on the described premises, or on the persons of those present. Narcotics, such as heroin, are easily concealed on a person and may readily be disposed of. Where, as in this case, probable cause to believe that a drug is kept or concealed on certain described premises is established to the satisfaction of a proper magistrate, the search of a person found on the premises in the execution of a search warrant is not only reasonable, but necessary to secure effective enforcement of the Uniform Narcotic Drug Act." 208 Kan. at 898.

The *Lambert* court held that "[b]ecause the affidavit accompanying the application stated that persons within the premises were conducting illegal drug sales, *Loudermilk* is distinguishable and not overruled by *Ybarra*." 238 Kan. at 449.

The State asserts that the legal conclusion in *Loudermilk* is based on similar facts and permits the search of Vandiver. We disagree with the State's conclusion that *Loudermilk* applies. For a warrant to authorize a search of all persons on the premises where the warrant is being executed, the affidavit must contain facts sufficient for the issuing magistrate to believe that the premises are confined to ongoing illegal activity and that every person within the orbit of the search possesses the items sought by the warrant. *Horn*, 15 Kan. App. 2d 365, Syl. ¶ 2. The application for the search warrant of Moneymaker's apartment did not state that persons other than the occupant would be in the apartment or request that persons on the premises be searched. The affidavit to obtain the search warrant did not provide a factual basis for the issuing magistrate to determine that, other than the occupant, persons within the premises would be involved in or conducting illegal drug sales.

In circumstances where a police officer executing a search warrant of the premises observes unusual conduct by individuals not named in the search warrant which leads the officer reasonably to conclude in light of his or her experience that criminal activity may be afoot and that the persons with whom the officer is deal-

ing may be armed and presently dangerous, the officer is entitled for the officer's protection and the protection of others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault the officer. See K.S.A. 1994 Supp. 22-2402; *Terry v. Ohio*, 392 U.S. at 30-31.

In this case, however, there is no substantial competent evidence that exigent circumstances existed to authorize the search of Vandiver. There is nothing to indicate that the officer was concerned with his safety. After entering the apartment and executing the search warrant, the officer did not recognize Vandiver, had no reason to believe that Vandiver had previously committed an offense, and did not have sufficient facts to arrest Vandiver for possession of the marijuana in plain view. Under these facts, the Court of Appeals correctly determined that under K.S.A. 22-2509(b), the officer executing the search warrant had no reason to detain Vandiver to prevent the disposal or concealment of any objects particularly described in the warrant.

The judgment of the Court of Appeals reversing the district court is affirmed. The judgment of the district court is reversed. The case is remanded for a new trial.