(52 P.3d 353)

No. 88,250

STATE OF KANSAS, *Appellant*, v. WILLIAM ALFRED CRAWFORD, JR., *Appellee*.

Opinion filed August 23, 2002.

*Vanessa M. Fowler,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Carla J. Stovall,* attorney general, for appellant.

*Patrick M. Lewis,* deputy district defender, of Olathe, for appellee.

Before JOHNSON, P.J., LEWIS, J., and TOM MALONE, District Judge, assigned.

MALONE, J.: This is an interlocutory appeal of an order suppressing all evidence obtained as a result of an automobile stop based upon an anonymous tip. The sole issue is whether the anonymous tip concerning a reckless driver on a highway provided a sufficient basis for a sheriff's deputy to stop the defendant's vehicle.

On August 18, 2000, at approximately 1:50 p.m., Johnson County Sheriff's Deputy Mark Leiker heard a dispatch request for a Spring Hill police officer to respond to a report of a "reckless" driver in a black Dodge pickup with Oklahoma license plates traveling northbound from the county line on 169 Highway. Deputy Leiker responded to the dispatch because he was in the area and a Spring Hill police officer was not available. Deputy Leiker parked near the intersection of 207th Street and 169 Highway, approximately 1 mile north of the county line. Approximately 8 minutes later, a black Dodge Dakota pickup with Oklahoma license plates passed through the intersection traveling northbound. Traffic on the highway was light at the time. Without attempting to follow the pickup, Deputy Leiker activated his emergency equipment and stopped

the vehicle. Deputy Leiker did not observe any reckless driving by the defendant prior to the stop.

The subsequent investigation leading to Crawford's arrest for driving under the influence (DUI) need not be related in detail. Crawford does not challenge the probable cause to arrest. Suffice it to say, Crawford failed his field sobriety tests, failed a preliminary breath test, and subsequently failed his Intoxilyzer breath test.

Crawford was charged with DUI, in violation of K.S.A. 2000 Supp. 8-1567. He filed a motion to suppress the evidence obtained during the vehicle stop. After a hearing on the motion, the district court ruled that the stop was investigatory in nature and that the deputy lacked the required reasonable suspicion to make a *Terry* stop. See *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The district court suppressed all evidence obtained by the police as a result of the stop and detention. The State timely appeals the ruling.

"In reviewing a trial court decision regarding the suppression of evidence, we review the factual underpinnings of the decision by a substantial competent evidence standard of review and review the ultimate legal decision drawn from those facts de novo with independent judgment." *State v. Webber,* 260 Kan. 263, Syl. ¶ 3, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997). The facts and circumstances leading up to and including the stop in this case are not in dispute. Therefore, whether the district court properly suppressed the evidence is solely a question of law, and our standard of review is unlimited. *State v. Vandiver,* 257 Kan. 53, 56, 891 P.2d 350 (1995).

The State asserts the anonymous tip that a black Dodge Dakota pickup truck was driving recklessly was sufficient information to justify stopping the vehicle. Crawford counters that the stop was not justified as either a valid investigatory stop or a valid public safety stop.

The traffic stop of a vehicle by a law enforcement officer is a seizure under the Fourth Amendment to the United States Constitution. *State v. Hopper,* 260 Kan. 66, 69, 917 P.2d 872 (1996). The law recognizes two different types of traffic stops. An "investigatory stop" is permitted under K.S.A. 22-2402, which is a codi-

fication of *Terry*, 392 U.S. 1. The law also permits a "public safety stop," recognized in Kansas in *State v. Vistuba*, 251 Kan. 821, 824, 840 P.2d 511 (1992). Whether a traffic stop can be supported solely by an anonymous tip is a fact-sensitive question which must be determined on a case-by-case basis. Resolution of the issue depends upon whether the stop is categorized as an investigatory stop or as a public safety stop. Therefore, our analysis will be twofold: (1) Was the stop permitted as an investigatory stop? and (2) Was the stop permitted as a public safety stop?

*INVESTIGATORY STOP*

K.S.A. 22-2402(1) provides authority for an investigatory stop:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions."

In *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1938 (1999), our Supreme Court identified three factors to be used in evaluating whether an anonymous tip provides a sufficient basis for an investigatory stop of a motor vehicle by police: (1) the type of tip or informant involved, (2) the detail given about the observed criminal activity, and (3) whether the police officer's personal observations corroborate the information supplied in the tip. Regarding the first factor, the court has stated that the most favored of the tips are those which are in fact not really anonymous at all. Second on the scale of reliability are those tips in which, although the informant does not identify himself or herself, the informant gives enough information that his or her identity may be ascertained. Least reliable is an anonymous tip that is truly anonymous. 267 Kan. at 700-02.

The second factor identified in *Slater* is whether the informant gives enough detail about the observed activity to support a stop. A tip is more reliable if it is apparent that the informant observed the details personally instead of simply relying on information from a third party. 267 Kan. at 702.

The final factor in *Slater* is whether the police officer's personal observations confirm the report of the informant's anonymous tip.

An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by the informant. 267 Kan. at 703.

Applying the *Slater* test to the facts of this case, we conclude that Deputy Leiker lacked sufficient basis for an investigatory stop of Crawford's vehicle. First, the type of tip or informant involved was truly anonymous, which is the least reliable source of information. Second, Deputy Leiker was provided scant information about the observed criminal activity. He was only told that a black Dodge Dakota pickup with Oklahoma license plates was driving recklessly on 169 Highway. Deputy Leiker did not know how many people were in the truck, what the driver looked like, or what sort of behavior led to the characterization of the driving as reckless. Deputy Leiker did not even know if the informant observed the details personally or if the informant was relying on information from a third party. Finally, Deputy Leiker's personal corroboration was minimal. He did find the vehicle at the location as substantially described by the informant. However, such corroboration will exist in almost every case. Deputy Leiker observed no illegal activity or any other type of behavior by Crawford to corroborate the anonymous tip of reckless driving.

Deputy Leiker lacked the required reasonable suspicion to stop Crawford pursuant to K.S.A. 22-2402. The district court did not err in suppressing the evidence on the basis of an invalid investigatory stop.

*PUBLIC SAFETY STOP*

We must next consider whether the stop was a valid public safety stop. "A civil or criminal infraction is not always essential to justify a vehicle stop. Safety reasons alone may justify a stop, *if safety reasons are based upon specific and articulable facts.*" (Emphasis added.) *Vistuba*, 251 Kan. 821, Syl. ¶ 1. *Vistuba* involves a safety stop of a vehicle based upon an officer's personal observations of erratic driving.

In *State v. Tucker*, 19 Kan. App. 2d 920, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994), this court took *Vistuba* a step further and held that an anonymous tip may justify a safety stop of a ve-

hicle. In *Tucker*, the police received an anonymous tip that a white male was driving a red 1960's model Ford pickup southbound on K-61 Highway from Inman and that the driver appeared to be drunk and running vehicles off the road. Two officers located the pickup, and the description of the vehicle and the driver matched the anonymous tip. The officers did not see any erratic driving. However, the morning traffic on K-61 Highway was heavy. One of the officers testified that he pulled the vehicle over in the interest of public safety since the report indicated a potentially drunk person was running cars off the road.

Tucker argued on appeal that the safety stop of his vehicle was not supported by "specific and articulable facts." 19 Kan. App. 2d at 922. The court upheld the stop and stated that "an anonymous tip may provide sufficient indications of reliability to support police action." 19 Kan. App. 2d at 928. The court noted that whether an anonymous tip has provided sufficient facts to justify a safety stop of a motor vehicle by police must be determined from the totality of circumstances shown by the evidence. 19 Kan. App. 2d at 928. The court concluded under the facts of the case that the danger to the public was clear, urgent, and immediate, which justified the vehicle stop. 19 Kan. App. 2d at 931. In doing so, this court issued a strong warning:

"Our decision should be considered carefully within its context. . . . The balance [of the evidence] requires that a safety stop of the nature involved in this action be approved. However, we caution that the same type of tip may not be sufficient where the risk to the public is not urgent and the time exists to verify all aspects of the tip, including the caller's reliability. *Reliance on this decision to justify the use of an anonymous tip under other circumstances would be unwise, and we strongly discourage any attempt to expand this decision beyond the perimeters indicated.*" (Emphasis added.) 19 Kan. App. 2d at 931-32.

This court revisited the issue of a vehicle stop based upon an anonymous tip in *State v. Ludes*, 27 Kan. App. 2d 1030, 11 P.3d 72, *rev. denied* 270 Kan. 902 (2000). In *Ludes*, a police officer was informed by dispatch that there was a person driving a motorcycle on a specified road who appeared to be injecting something into his arm with a needle. The officer drove to the specified location and saw a motorcycle. The officer followed the motorcycle but did

not observe any driving infractions, nor did the driver exhibit any unusual behavior. Regardless, the officer stopped the motorcycle, later explaining: " 'I have a wife that's a diabetic, and she has had problems with the past, is insulin dependent. And people can get into a lot of trouble if they don't follow their insulin routine.' " 27 Kan. App. 2d at 1031.

Ludes was eventually arrested and convicted of DUI. On appeal, the court held that under the circumstances of the case, neither an investigatory stop nor a public safety stop was justified. 27 Kan. App. 2d at 1033-36. Regarding the public safety stop analysis, the court distinguished *Tucker* by noting the facts in that case involved an anonymous tip that a drunk driver was running other vehicles off the highway in heavy morning traffic. In *Ludes*, the court concluded:

"In the present case, the danger to the public was neither clear, urgent, nor immediate.

"Because the caller's tip was so lacking in details and [the officer] did not observe any behavior which would indicate immediate danger to Ludes or the public, it cannot be held the stop was justified under the guise of a safety stop." 27 Kan. App. 2d at 1036.

The facts of this case are much closer to *Ludes* than to *Tucker*. Here, the information contained in the anonymous tip was the report of a "reckless driver" on the highway. Deputy Leiker testified that 169 Highway had a history of bad accidents. However, there was no information that the vehicle driver was intoxicated. There were no details to describe how or why the driving was considered "reckless." When Deputy Leiker spotted the reported vehicle, traffic on the highway was light. This is far less than the information possessed by the officers in *Tucker*, where the danger to the public was clear, urgent, and immediate. Here, as in *Ludes*, there was insufficient evidence to support such a finding.

We recognize that this issue involves important public policy considerations.

"In determining whether a stop of a motor vehicle violates a defendant's Fourth Amendment rights, a court must balance the rights of the individual to privacy and freedom of movement with the right of the public to be protected from unreasonable dangers; the greater and more immediate the risks to the public

revealed by the tip, the less important is the corroboration and reliability of the tip." *Slater*, 267 Kan. 694, Syl. ¶ 6.

The risk of danger presented to the public by a drunken driver is so great that courts cannot afford to impose strict, verifiable conditions on an anonymous tip before a traffic stop can be made in response to such a tip. The limited intrusion on time and freedom of travel occasioned by a safety stop is minimal. The risk to the public if the tip is accurate is extremely high. *Tucker*, 19 Kan. App. 2d at 931.

On the other hand, the potential for abuse in allowing such stops must be recognized by the courts. As noted in *Ludes*: "If successful, the public safety stop would literally emasculate the constitutional protection afforded a motorist's privacy under *Terry*." 27 Kan. App. 2d at 1035. Further, as noted in the district court's memorandum decision in this case: "[A]n investigatory stop based on an anonymous tip without an indicia of reliability cannot be saved by simply renaming it a safety stop." If the facts of this case were sufficient to justify a public safety stop, it would be hard to imagine any factual scenario where a traffic stop by law enforcement would not be upheld by the courts. In this case, it would not have been unreasonable for Deputy Leiker to have followed the vehicle until observing some evidence of erratic driving. We conclude there was an absence of specific and articulable facts to justify a public safety stop of Crawford's vehicle.

Under the specific facts and circumstances of this case, we hold the anonymous tip that a vehicle was driving recklessly, without anything more, provided an insufficient basis to stop the defendant's vehicle, either as an investigatory stop or as a public safety stop. Accordingly, the district court was correct in sustaining the motion to suppress evidence obtained as a result of the vehicle stop.

Affirmed.

LEWIS, J., dissenting: I respectfully dissent from the majority opinion. The majority opinion affirms the decision of the trial court to suppress evidence obtained by the police as a result of the stop and detention of the defendant. The suppression had the effect of

making it impossible for the State to convict the defendant for driving under the influence, even though he failed his Intoxilyzer breath test and his field sobriety tests. The majority opinion affirms the trial court's decision that an anonymous tip that the defendant was driving "recklessly" was not sufficient to permit the police officer to stop the defendant's vehicle and that the stop was not truly a safety stop.

I disagree. I believe the decision of this court in *State v. Tucker*, 19 Kan. App. 2d 920, 878 P.2d 885 (1994), is controlling and that the trial court should be reversed on the basis of *Tucker* and the matter remanded for trial on the charges against the defendant.

I see no need in going over the facts or details set forth in *Tucker*. That opinion appears at the citation above, and I incorporate all relevant portions of that opinion into this dissent.

The facts in this case indicate there was an anonymous tip of a "reckless" driver in a black Dodge pickup with Oklahoma license plates traveling northbound from the county line on Highway 169. A Johnson County sheriff's deputy was close to that area, responded to the dispatch, and waited for the Dodge pickup. After approximately 8 minutes, a black Dodge pickup with Oklahoma license plates passed by the deputy, and the deputy stopped the vehicle. The deputy admits he did not observe any reckless driving by the defendant prior to the stop.

The fact remains, however, that the anonymous tip indicated that the defendant was driving "recklessly." K.S.A. 8-1566(a) defines reckless driving as: "Any person who drives any vehicle in *willful or wanton disregard for the safety of persons or property* is guilty of reckless driving." (Emphasis added.) I suggest that an individual who has been observed driving a vehicle on one of our highways in willful or wanton disregard for the safety of others represents a serious threat to others using that highway. I believe the threat here is at least as great as that set forth in *Tucker*. In Syllabus 6 of that decision, we said: "In evaluating whether an anonymous tip has provided a sufficient basis for a safety or investigatory stop of a motor vehicle by police, the greater and more immediate the risk to the public revealed by such a tip, the less important is the corroboration and reliability of the tip."

I consider someone who is driving his or her vehicle in wanton or willful disregard for the safety of persons or property to be an immediate risk to the public.

In Syl. ¶ 8 of *Tucker*, we said: "An anonymous tip may justify the stop of a motor vehicle by police where the tip reveals an immediate and clear danger to the public."

I suggest rather strongly that a tip that an individual is driving his or her vehicle in willful or wanton disregard for the safety of others constitutes an immediate and clear danger to the public.

In Syl. ¶ 7 of *Tucker*, we set forth the facts under which an anonymous tip would be sufficient. I believe the facts of this case fit within that syllabus and the *Tucker* decision. The police, having been notified that someone is driving recklessly, have an immediate duty to stop that vehicle in an effort to protect others using public highways.

The majority opinion has allowed a drunken driver to escape punishment on the basis of what I consider to be a total technicality. This is not a robbery or theft or rape case; it is a case involving a moving motor vehicle on the highways of this state. To say that an anonymous tip does not give an officer probable cause for the stopping of the vehicle described in the tip places all of us at risk of harm or even loss of life from those driving recklessly or in a drunken state.

I feel very strongly that we should not permit individuals who drive in this matter to escape punishment because we do not consider the information which led to his or her arrest to have been "reliable." If, as we pointed out in *Tucker*, we are going to wait around for the police to determine whether the tip is reliable, we subject others using the roads in a lawful manner to injury or death from a driver who could be and should be stopped immediately.

Let us imagine the public reaction if the officer had ignored the tip because it was anonymous and the defendant had killed an innocent user of the road. The police cannot do their jobs if we do not adapt our laws to the circumstances presented. There would be a slight delay to the driver if the tip was wrong. If the tip was accurate and ignored, someone might die or be seriously injured. Death or serious injury is a final and irrevocable intrusion on the

public's freedom of travel. A stop based on an anonymous tip is a very slight intrusion on that right of the driver.

I would reverse the trial court, admit the evidence, and remand the matter for trial.